UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SCOTT MCGUIRE                                                                                  PLAINTIFF

v.                                                      CIVIL ACTION NO. 3:01-CV-466-S

ALPINESTARS S.P.A.                                                        DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on motions of the defendant, Alpinestars S.P.A. ("Alpinestars"), to exclude the testimony of plaintiff's retained expert Milton Bailey (DN 82) and for summary judgement (DN 83), and of the plaintiff, Scott McGuire ("McGuire"), for leave to file an amended complaint (DN 92).

## BACKGROUND FACTS

On July 12, 2000, McGuire was riding his motorcycle on a dirt trail near Shepherdsville, Kentucky. At the time, he was wearing his Alpinestars Tech 8 off-road motocross boots (the "boot" or "boots"). While riding at a speed of 25-30 miles per hour, McGuire's left foot slipped and struck the ground causing pain to his toes. He then made a five to six mile ride back to his pickup truck where he loaded his motorcycle in order to drive home. McGuire drove the pickup truck to his home and placed his foot in a cooler of ice water while he awaited the arrival of an ambulance his mother had called. When the ambulance arrived the medical personnel cut his boot from his left foot. At this time it was noted that two of McGuire's toes were smashed. McGuire later underwent surgery to amputate the two toes.

## MOTION TO EXCLUDE EXPERT TESTIMONY

McGuire contends that his toes were injured because the boots that he was wearing were defectively designed and therefore unreasonably dangerous. McGuire's expert, Milton Bailey ("Bailey"), concluded that Alpinstars' "defective construction" of the boot caused McGuire's injury. Bailey Report. Alpinstars argues that Bailey is not qualified to render an opinion in this action and that his conclusions fail to meet the standard for admissibility contained in the Federal Rules of Evidence. Rule 702 sets out the standard for expert witness testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and later *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), held that trial judges must perform a gatekeeper function to exclude unreliable and irrelevant expert testimony. In performing this function the trial court must use a two-step inquiry:

> First, the court is to determine "whether the experts' testimony reflects 'scientific knowledge,' whether their findings are 'derived by the scientific method,' and whether their work product amounts to 'good science.'" An expert opinion that is based on scientifically valid principles will satisfy Fed. R. Evid. 702; an expert's subjective belief or unsupported speculation will not.
>
> Second, the court "must ensure that the proposed expert testimony is relevant to the task at hand." The Supreme Court referred to this as the "fit" requirement. When making a preliminary finding regarding an expert's qualifications under Fed. R. Evid. 104(a), the court is to examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." The trial court must determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony.

*Smelser v. Norfolk S. Ry.*, 105 F.3d 299, 303 (6th Cir. 1997)(citation omitted). Alpinstars challenges both the reliability, i.e., "the methodology and principal's underlying [Bailey's] testimony" and the

relevance, i.e. Bailey's qualifications as an expert of "off-road motorcycle boots." *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999)(citation omitted).

**A. RELEVANCE**

We will first consider Bailey's qualifications. Alpinstars argues that Bailey is not qualified to testify because: (1) his curriculum vita does not include the phrase "motorcycle boot;" (2) he has never published a peer-reviewed article on off-road motorcycle footwear or safety; (3) he is not an engineer, nor does he possess a doctorate level degree; (4) he describes himself only as an expert in the "safety of flooring materials" and "the ergonomic aspects of locomotion;" and (5) he cannot distinguish a road motorcycle boot from an off-road motorcycle boot. We disagree with the defendant's assessment of Bailey's qualification, and find, based on his knowledge, skill, experience, and training, that he is qualified to proffer expert testimony in this matter.

Bailey has over 40 years experience in the boot and shoe industry, including being the Navy Departments' footwear expert for 37 years. Bailey Aff. at ¶ 3. Bailey has received the President's Citation and a Citation from the Undersecretary of the Navy for his contributions to footwear technology. *Id*. Bailey has also participated in developing standards related to protective footwear. These standards include the American National Standards Institute ("ANSI") Z 41 standard for Personal Protection – Protective Footwear, and numerous military boot safety standards. *Id*. at ¶ 5.

The defendant also directs the court's attention to the fact that Bailey's experience has not been with "motorcycle" boots. However, the court has not been advised of any distinction between motorcycle boots and other boots designed to protect the foot. Therefore, we will hold that Bailey's knowledge, skill, experience, and training, establish a foundation for his proposed testimony regarding whether the Alpinstars boot is defective and unreasonably dangerous.

**B. RELIABILITY**

We next consider whether Bailey's report amounts to "good science." Bailey's report can be divided into two sections. The first section of the report describes the boot, Bailey's method of examination, and states Bailey's opinion. The second section of the report lists the nine factors/problems Bailey cites as the reasoning behind his opinion that the boot was unreasonably dangerous. Alpinstars argues that Bailey's opinion does not reflect scientific knowledge because: (1) it is not the product of reliable principles or methods; and (2) it is not based upon sufficient facts or data.

We will first consider whether Bailey's conclusions were based on reliable principles and methods. The *Daubert* court has provided a non-exclusive list of factors to be considered when making this determination: (1) whether the theory can be tested; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted in the particular field. *Daubert*, 509 U.S. at 593. However, not all expert opinions deal with a test in a lab or the recreation of an occurrence, and therefore, situations exist in which the *Daubert* factors do not apply.

In reaching his opinion, Bailey "studied the Defendants (sic) interrogatory answers, responses of three boot evaluators, a list of 57 APS Tech 8 Boot riders, a list of 30 APS inspectors, a list of the designers of the footwear, APS patterns, design, technical, promotional, catalogue documents which detailed the boot's construction, and seven related articles." Bailey Report. Bailey also performed a burn test on the boot's bootie[1], took measurements of the boot, measured the hardness of the boot with a Shore A durometer, and flexed the boot to determine the extent of its flex strength. Bailey depo. at 80-81. Included in Bailey's report are nine "factors" that lead Bailey to reach his conclusion that the boot had been defectively designed:

---

[1] The bootie is a leather sock that is connected to the inside of the boot.

1. The footwear was ballistically unsuitable.
2. The boot's decorative exterior was hazardous.
3. No evidence Alpinstars tested the boots upper components.
4. No evidence Alpinstars used a suitable quality control and inspection system.
5. No evidence Alpinstars reviewed the Hurt Study of the National Highway Safety Administration.
6. Alpinstars' testing was subject to the "halo effect."
7. Alpinstars ignored critical safety requirements in favor of exterior design.
8. No evidence that boots are properly fitted.
9. Alpinstars used no warning labels.

Bailey Report.

Bailey's testimony is not the type in which the court would require peer review or known rates of error as stated in *Daubert*. However, in fulfilling our gatekeeper function, this court is required to exclude expert testimony that does not assist the trier of fact in determining whether a product was unreasonably dangerous. Therefore, we must determine whether Bailey's testimony, based on his knowledge, skill, and experience in the boot industry will assist in determining whether the boot was unreasonably dangerous.

Factor I of Bailey's report states that the boot was ballistically unsuitable. Bailey reaches this conclusion based upon his finding that the boot did not comply with the ANSI Z 41 standard, the American standard. Based on Bailey's experience with ANSI standards, the boot industry and his examination of the boot, we find that his opinion that the boot does not comply with an ANSI standard reflects scientific knowledge and will assist the trier of fact in determining whether the boot is unreasonably dangerous. Although Bailey did not write a study that was peer reviewed or perform a test that can show a rate of error, his expert opinion regarding whether the boot complied with ANSI standards is an example of a situation in which all the *Daubert* factors do not apply. Certainly Bailey's opinions on the boot's compliance with the ANSI standard can be tested.

We do not find that the eight other factors stated in Bailey's expert report will assist in determining whether the boot was unreasonably dangerous. Bailey's other opinions are not grounded in "good science," and can only be described as Bailey's subjective beliefs.

Factors II and VII state that the boot's decorative exterior was hazardous. However, Bailey does not connect this observation to any scientific or industry standard. Nor does he base his criticism of the boot's exterior on tests, data, or calculations. In fact, Bailey's statement that the seams and projecting buckles were "catch-traps" for branches is irrelevant to the undisputed facts of McGuire's accident. Therefore, we cannot say that these factors are derived from a scientific method.

Factors III, IV, V, VI and VIII state that Bailey found a lack of evidence that Alpinstars tested the upper components of the boot, used suitable quality control, reviewed the Hurt Study of the National Highway Safety Administration, performed sufficient field testing, and that McGuire's boot was properly fitted. These opinions are not based on a scientific method and do not explain why the boot is unreasonably dangerous. Instead, Bailey is stating factors, which if pursued by Alpinstars, might possibly have helped prevent McGuire's injury. In fact, Bailey testified in his deposition that he does not know what the industry standard is in the motorcycle boot industry. We find that Bailey has not linked these criticisms with any scientific foundation, and therefore we will not permit him to testify regarding an unsupported observation.

Bailey also states, in Factor IV, that Alpinstars used no warning labels. However, he does not state why this makes the boot unreasonably dangerous, nor does he state what type of warning the boot should have had nor what industry standard on warning labels was not met. Again, we cannot say that this factor is derived from a scientific method.

Therefore, we only find Bailey's testimony regarding whether the boot complied with ANSI standards "reliable." The remainder of his testimony is nothing more than unsupported after-the-fact criticisms of the boot. The jury will not be asked how the boot could have been made better, nor how the plaintiff's accident could have been prevented. The jury will be asked to determine if the boot was defective and unreasonably dangerous. Bailey's opinions go to the former, but to the extent they are offered to establish the latter, they are inadmissible as not grounded in any scientific

method or industry standard. An "expert's bald assurance of validity is not enough." *Smelser v. Norfolk S. Ry.*, 105 F.3d 299, 303 (6th Cir. 1997) (citation omitted). There is a substantial risk that a jury would misperceive Bailey's opinions as evidence of defectiveness rather than how Bailey might have designed the boot differently in hindsight.

Next, we will consider Alpinstars argument that Bailey's opinion is not based upon sufficient facts or data. "Expert testimony ... is inadmissible when the facts upon which the expert bases his testimony contradict the evidence." *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999). Alpinstars argues that the first section of Bailey's report demonstrates that his opinion was based on facts that contrast and contradict McGuire's own testimony regarding the incident.

Alpinstars lists seven facts upon which Bailey based his opinion that it believes contradicts McGuire's testimony: (1) the boot was a size 8; (2) McGuire was riding in the woods; (3) McGuire was riding at 20 miles per hour; (4) the accident occurred when a branch hit the wheel spoke; (5) McGuire's foot came off the pedal; (6) McGuire's foot flexed forward; and (7) McGuire's toes were severed. Although these facts do not precisely match McGuire's testimony we do not find that the inconsistencies[2] render Bailey's opinion inadmissible. Rather, they put into question the reliability of Bailey's testimony in light of Bailey's departure from the version of the accident given by his own client. The facts that Alpinstars finds inconsistent do not have any relationship with Bailey's opinion that the boot does not comply with the ANSI Z 41 standard. This conclusion is based upon Bailey's knowledge of the standard and his inspection of the boot, not the particulars of the accident. Therefore, we will hold that Bailey may testify regarding whether the boot complied with ANSI Boot Safety Standards, but not the other subjective factors Bailey believes would have prevented McGuire's injury.

---

[2] Although Alpinstars has directed the court's attention to inconsistencies between the facts in Bailey's report and McGuire's own testimony of the incident, Bailey has stated in his deposition that his opinion would not change if the facts he stated had been different.

**MOTION FOR SUMMARY JUDGMENT**

Alpinstars has moved for summary judgment arguing that McGuire cannot produce evidence of a defect in the design of the boot.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

In Kentucky,

> [o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm thereby caused ... if (a) the seller is engaged in the business of selling such a product and (b) it is expected to and does reach the user ... without substantial change in the condition in which it is sold.

*Nichols v. Union Underwear Co.*, 602 S.W.2d 429, 431 (Ky. 1980). A defect is shown when the plaintiff is able to establish "that an ordinarily prudent company engaged in the manufacture of the [product], being fully aware of the risk, would not have put it on the market...." *Id*. at 433.

Based on our finding above, allowing Bailey to testify regarding his opinion that the boot did not comply with ANSI Z 41, a material dispute does exist regarding whether the boot was unreasonably dangerous. Although Bailey states that he does not know the motorcycle boot industry standard, we find that a jury could find the ANSI standards applicable to off-road motorcycle boots and that an ordinarily prudent manufacturer would not place a motorcycle boot on the market knowing it did not comply with ANSI standards. Deviation from industry standards is only one of many factors that can lead to this determination. *Id*. Therefore, we will deny Alpinstars' motion for summary judgement.

## MOTION TO AMEND COMPLAINT

McGuire, has moved for leave to file a second amended complaint. McGuire states that due to a clerical error he mistakenly stated a claim that he was exposed to asbestos, and requests leave to amend paragraph 12 of the complaint to conform to a claim for punitive damages under established tort law and strike the reference to asbestos. McGuire also requests leave to add newly-discovered facts to the Factual Background section.

Alpinstars does not object to McGuire's request to strike the erroneous reference to asbestos, however, it does object to the proposed amendments, urging that they should not be permitted at this late juncture.

We conclude that the amendment of paragraph 12 should be permitted, in so much as it seeks to amend the complaint against Alpinstars S.P.A. This court has previously granted summary judgement in favor of Alpinstars USA (DN 42), and therefore, the complaint may not be amended to raise any new claims against Alpinstars USA. We also conclude that McGuire's requests for leave to add newly-discovered facts to the complaint should not be permitted.

- 10 -

## CONCLUSION

For the reasons set forth above, the court will deny Alpinstars' motion to exclude the expert testimony of Milton Baily, and deny its motion for summary judgement.  The court will also grant in part and deny in part McGuire's motion to file a second amended complaint.  A separate order will be entered herein this date in accordance with this opinion.